[Philadelphia, December 29, 1828.]

BARNET *against* IHRIE.

IN ERROR.

A writ of *Habere Facias Seisinam*, is not the proper form of execution in an assize of nuisance.

*It seems*, that a *Distringas* to compel the defendant, himself, to abate the nuisance, is the proper writ.

An execution, for costs not allowed by law, may be reversed on a writ of error.

What costs are allowable, and what are not, in an assize of nuisance.

A verdict of the recognitors in this assize of nuisance, having been rendered in favour of the plaintiff below, the defendant in error—"Judgment *nisi*," was entered thereon, on the 28th of *January*, 1826, and at half past twelve o'clock, in the morning of the 30th of the same month, the plaintiff issued a writ of execution in

' (Barnet *v.* Ihrie.)

the following form, which was placed in the sheriff's hands at four o'clock of the same morning:

" *Northampton* county, *ss.* .

" The Commonwealth of *Pennsylvania*, to the Sheriff of *Northampton* County, greeting. Whereas, *Peter Ihrie*, the. elder, lately in our County Court of Common Pleas, for the County of *Northampton*, before our judges thereof at *Easton*, instituted a writ of assize of nuisance against *William Barnet*, the elder, late of your county, for, that he, the said *William Barnet*, the elder, unjustly and without judgment, had erected, levied, and raised a certain wall and dam, thereby obstructing a certain mill site, and a certain water course, called the *Bushkill* creek, to the nuisance of the freehold of the said *Peter Ihrie*, the elder, situate in the Borough of *Easton* and county aforesaid, within thirty years, then last past, and it hath been found in our said court, by the view of the recognitors of the assize aforesaid, that the said *Peter Ihrie*, the elder, on the first day of *January*, in the year of our Lord one thousand eight hundred and twenty-six, was, and still is seised in his demesne as .of fee, of, .and in a certain water mill site, and two acres and fifty-nine perches of land, situate in the Borough of *Easton* and county aforesaid, together with a certain water course and stream of water, called the *Bushkill* creek, running through and along the said land from the said mill site, so that at the said mill site upon the said land, before the levying of the said wall. and dam, there could be had and was a fall of six feet four inches of and upon the said water course and stream of water, to be applied to the driving of a water wheel for propelling mill works and machinery, and the said *Peter Ihrie*, the elder, being so thereof seised, the said *William Barnet*, the elder, on the day and year aforesaid, at the county and borough aforesaid, unjustly and without judgment, levied and raised a certain wall and dam, thereby obstructing the said mill site and water course, and the said stream of water running therefrom through and along the said land, by reason whereof the said land is overflowed, and the said mill site is injured; and the fall thereof, and of the said water course is reduced to four feet, and the power thereof diminished, so that the same could not and cannot be applied 'as it otherwise could and would have been, and still would be applied to the driving of a water wheel for propelling mill works and machinery. Wherefore, it was considered and adjudged by our said court, that the aforesaid wall and dam be removed, and abated so as to remove the swelling thereby occasioned at and upon the lands of the said *Peter Ihrie*, the elder, and reduce and restore the water in the said *Bushkill* creek, to its natural current and channel, and the said *Peter Ihrie*, the elder, should recover of and from the said *William Barnet*, the elder, as well the sum of two hundred dollars, lawful money of the *United States*, for his damages which he has sustained by occasion of the obstruction and nuisance aforesaid, as also one hundred and ninety-eight dollars and sixty-eight

(Barnet *v.* Ihrie.)

and a-quarter cents, which, to the said *Peter Ihrie,* the elder, in our said court were adjudged for his costs and charges by him about his said suit in that behalf expended, whereof the said *William Barnet,* the elder, is convict, as by the record and proceedings thereof, remaining in our said court more fully is manifest and appears.    Therefore we command you, that justly and without delay, you cause the said wall and dam to be removed and abated so as to remove the swelling thereby occasioned at and upon the land of the said *Peter Ihrie,* the elder, and reduce and restore the water in the said *Bushkill* creek to its natural current and channel.    And that of the goods and chattels, lands and tenements, of the said *William Barnet,* the elder, within your bailwick, you cause to be levied the said sums of money, amounting to three hundred and ninety-eight dollars and sixty-eight and a-quarter cents, so, as aforesaid, to the said *Peter Ihrie,* the elder, adjudged for his damages, costs, and charges aforesaid.    And have you those monies before our judges at *Easton,* at our county Court of Common Pleas, there to be held for the county aforesaid, the third *Monday* of *April* next, to render to the said *Peter Ihrie,* the elder, for his damages, costs, and charges aforesaid.    And how you shall further execute this, our writ, make manifest to our said judges, at the day and place aforesaid; and have you then there this writ. Witness, &c."

On the writ were these endorsements, viz.

Of *April* Term, 1826.

| | |
|---|---|
| *Peter Ihrie,* the elder, | |
| v. | *Hab. fac. seis. cum. fi. fa.* |
| *William Barnet,* the elder. | |

|  | $ | cts. |
|---|---|---|
| Real damages, - - - - - - | | 200 |
| Interest from *January,* 28, 1826, - | | |
| Prothonotary, - - - - - | 7 | 39 |
| Recognitors, - - - - - | 137 | 00 |
| Sheriff, - - - - - - | 21 | 62½ |
| Plaintiff's bill, - - - - - | 32 | 16 |
| *Fieri facias,* - - - - - | | 50 |
| | 198 | 67½ |
| Levy, - - - - - - | 1 | 00 |
| Advertising bills, - - - - | 2 | 25 |
| Cryer, - - - - - - | | 75 |
| Poundage, - - - - - | 4 | 14 |
| Executing *habere facias,* - - - | 76 | 00 |

The sheriff's bill was composed of the following items, viz.

| | | |
|---|---|---|
| Summoning defendant, - - - | | 75 |
| Copy - - - - - - | | 12½ |
| Court fees, - - - - - | | 12½ |

(Barnet *v.* Ihrie.)

| | | | | | | |
|---|---|---|---|---|---|---|
| *Brought forward,* | - | - | - | - | 1 | 00 |
| 24 Recognitors, | - | - | - | - | 6 | 00 |
| 24   do.   do. | - | - | - | - | 6 | 00 |
| 24   do.   do. | - | - | - | - | 6 | 00 |
| Attending do. | - | - | - | - | 2 | 62½ |

|  |  |
|---|---|
| | 21   62½ |

The particulars of the prothonotary's fees, were these, viz.

| | | | | | | |
|---|---|---|---|---|---|---|
| Writ of assize, | - | - | - | - | | 75 |
| *Venire facias,* | - | - | - | - | 1 | 50 |
| Filing papers, | - | - | - | - | | 37½ |
| First court, | - | - | - | - | | 37½ |
| 4 Motions, | - | - | - | - | | 37½ |
| Judgment of court, | - | - | - | - | 2 | 00 |
| 2d Court, | - | - | - | - | | 37½ |
| Stationary, | - | - | - | - | | 10 |
| Taxing plaintiff's bill, | | - | - | - | | 18¾ |
| Do. Recognitor's, | - | - | - | - | | 18¾ |
| Trial, | - | - | - | - | | 75 |
| Rule to take deposit, | | - | - | - | | 27 |

|  |  |
|---|---|
| | 7   40¾ |

The fees of the recognitors were charged thus:

| | | | | | | |
|---|---|---|---|---|---|---|
| 22 *M. Term,* | - | - | - | - | 22 | 00 |
| 12 *August, T.,* | - | - | - | - | 12 | 00 |
| 15 *November, T.,* | - | - | - | - | 15 | 00 |
| 16 *November, T.,* | - | - | - | - | 16 | 00 |
| 21 *January, T.,* 25, | | - | - | - | 21 | 00 |
| 12, 26, 27, 28, | - | - | - | - | 36 | 00 |

|  |  |
|---|---|
| | 137   00 |

The plaintiff's bill consisted of charges for subpœnas and the attendance of witnesses.

The costs of executing the writ of *Habere Facias Seisinam,* consisted of money paid to various persons for assisting the sheriff, a sum of three dollars seventy-five cents paid for rum and powder, a fee of two dollars to the sheriff for delivering possession, and the sum of nine dollars for six days' attendance by the sheriff.

In addition to the costs above enumerated, there was a charge of three dollars, as the attorney's fee.

From the taxation of these costs by the prothonotary, the defendant entered an appeal to the court, upon which, however, no decision was ever made.

The plaintiff moved to set aside the execution, and in support of his motion filed seven reasons; upon each of which the President of

(Barnet *v.* Ihrie.)

the Court of Common Pleas delivered a written opinion. The court having refused to set aside the execution, the record was removed by writ of error to this court, where five errors were assigned in the record and proceedings below. On the argument, however, they were resolved into three points.

*Jones* and *Binney*, for the plaintiff in error.—Every thing relating to the ancient action of assize of nuisance, which is now revived after a long slumber, deserves great attention. If we are to adhere to the old law, we may by diligent search go right; but if, as the court decided, when this case was last before them, this antiquated remedy is to be modelled according to modern forms, great consideration is necessary in every stage of its reformation, particularly in fixing the true character of the judgment and execution.

1. We contend, that there is error in the mandate of the execution.

2. That there is error in the costs it authorized the sheriff to make.

3. That the plaintiff in error, is entitled to restitution of all the costs illegally levied.

1. It must be conceded to us, that no such writ as that in question, is any where to be found, to enforce a judgment in an assize of nuisance. It is an invention peculiar to this case, and has, for its basis, the execution in an assize of novel disseisin. Writs are duly applied by the common law to enforce particular judgments, and it is not in the power of the prothonotaries or courts to change them. A writ, adapted to the case, and of an entirely different description from the one used, is found in the Register, a book of the highest authority. *Co. Litt.* 73. 3 *Bl. Com.* 183. The mandate of this writ is to distrain the plaintiff, in order to make him abate the nuisance, in view of the jurors. " *Rex vic' salutem. Scias quod convictus est in curia nostra coram justitiariis nostris ad assisas, &c., apud S. per quandam assisam ibi inter H. & I. qd I. divertit cursum cujusdam aquæ in C. ad nocumentum liberi tenementi præd' H. in S. Et ideo tibi præcipimus quod distringas præd' Johannem ad reducendam præd' aquam in cursum rectum ad custagium ejusdem Johannis, per visum recognitorum assisæ præd,"* &c. *Registrum Judiciale, p.* 56. No other form than this is to be found. There is nothing superfluous, deficient, or ambiguous. The authorities show that it is correct in principle. The object is to restore the ancient state of things. *Fleta,* 274, sect. 4, 269, sect. 18. *Booth,* 283. With this, it is impossible that the sheriff should be acquainted. But it is known to the recognitors, and therefore it is to be restored in their view. It is no objection that some of them may be dead. The business can be done as effectually in the presence of six, as of the whole number. The office of the sheriff is merely ministerial in collecting the recognitors together. If he were to undertake to restore the stream

(Barnet *v.* Ihric.)

to its ancient state, he must do so blindly, and at his peril. He is not entitled to indemnity, and is, therefore, placed under great responsibility, without protection. According to the authority of *Fleta* and *Booth*, the abatement is to be by the defendant, and the sheriff has nothing to do, unless the defendant refuse to abate, and there is nothing to distrain upon. Even upon an indictment for a nuisance, the writ does not go to the sheriff to abate, unless the party refuse to abate at his own cost. *Rex* v. *Newdigate, Comb.* 10. The object of the assize is to make the defendant abate, and if he do so, pending the writ, the writ itself shall abate. *Fitz. Nat. Brev.* 426. In this respect, it differs from a *Quod Permittat,* the object of which is, to authorize the plaintiff to abate. *Fitz. Nat. Brev.* 289. 3 *Bl. Com.* 221. In that case, there is no *Distringas,* nor any mandate to the sheriff. Whenever the sheriff is called upon to do an act, calling for the exercise of judgment, he is provided with an inquest. The writ of *Distringas* is the most convenient, peaceable, and reasonable remedy, and quite as effectual as the one resorted to, which is calculated to produce disorder and breaches of the peace. A large number of persons brought together by the sheriff, whose passions are inflamed, as well by rum, as the nature of the work in which they are about to engage, and with powder in their hands, can hardly be expected to keep within the peaceful limits of the law. To reduce a dam a few inches, is a nice operation, and can be best performed by the party most interested in it. If he does too little, he may be enforced to do what is right; but if the sheriff and his *posse* do too much, as is most likely to be the case, the consequences must be highly injurious. In the analogous case of detinue, the object of which is the restoration of a specific chattel, of which the sheriff knows nothing, a *Distringas* is the writ of execution. *Roll. Ab.* 737. If this were *res nova,* the *Distringas* would be the most convenient and appropriate writ that could be devised. But it is already provided, and unless the court is at liberty to depart from what has been established by law, no other can be adopted. The entry of "judgment *nisi,*" in the usual short mode, is not the judgment of the court, that the sheriff shall abate according to the finding of the recognitors, unless that be the judgment which ought to have been given, which is not the case. There is nothing to show, that the court intended to give judgment, that the sheriff should restore the ancient state of things. *Lill. Ent.* 578. *Cases Temp. Hardw.* 340, 355. 1 *Yeates,* 92, 575. 4 *Dall.* 147. 3 *Bl. Com.* 222. 1 *Binn.* 251, 253. 9 *Serg. & Rawle,* 367. *Booth,* 39, were also cited in the course of the argument.

2. The execution for costs, is, in many particulars, wrong. The judgment on the roll, is "Judgment *nisi,*" which is a judgment for the costs for which the execution issued. There is no such thing as a general judgment for costs, reduced to form. The costs are always set out. In no other way, can the defendant in error justify his execution. If the judgment be not for these costs, there is no judgment.

(Barnet *v.* Ihrie.)

This judgment is a legitimate subject of a writ of error. To allow or withhold costs, is not a matter of discretion with the court below. To do either improperly, is error. It is not contended on behalf of the plaintiff in error, that this court can review the evidence, upon which the court below taxed the costs which are allowed by law; but it is contended, that where under no possible state of facts, the costs charged, can be allowed, this court may reverse the execution. The inquiry does not involve a review of the evidence exhibited to the court below. If this judgment were drawn out at length, it would appear, that the greater part of the costs for which it was given, were compensatory fees which are expressly forbidden by law, and the allowance of which, makes the judge guilty of a misdemeanor in office. If the law does not authorize the costs which have been allowed, it is the duty of this court to reverse the execution. *Ilgenfritz* v. *Douglass*, 6 *Binn.* 402. *Landis* v. *Shaeffer*, 4 *Serg. & Rawle*, 196. *Stuart* v. *Harkins*, 3 *Binn.* 321. *Lewis* v. *England*, 4 *Binn.* 5. *Sneively* v. *Weidman*, 1 *Serg. & Rawle*, 417. *Galey* v. *Beard*, 4 *Yeates*, 546. *Hinds* v. *Knox*, 4 *Serg. & Rawle*, 417. *Downs* v. *Lewis*, 13 *Serg. & Rawle*, 198. *Curtis* v. *Buzzard*, 15 *Serg. & Rawle*, 21. *Grace* v. *Altemus*, 15 *Serg. & Rawle*, 133. *Lord Raym.* 58. *Cassel* v. *Duncan*, 2 *Serg. & Rawle*, 57. *Wills* v. *Denny*, *Moore*, 598, *pl.* 819. *Field* v. *Massachusetts Turnpike Company*, 5 *Mass. R.* 389.

(The counsel then examined the several bills of costs returned with the record, and pointed out and commented upon those items which they considered as not allowed by law; referring in the course of their observations, to the Acts of the 28th *March*, 1814. *sect.* 26. 6 *Sm. L.* 234. 22 *February*, 1821, 7 *Sm. L.* 367, 368, 369, 377. 29 *March*, 1805. *sect.* 13, *Purd. Dig.* 345. 1 *Serg. & Rawle*, 505. 4 *Serg. & Rawle*, 291.)

The appeal from the prothonotary to the court, on the taxation of the costs, forms no objection to the review of the subject by this court. The execution was executed before the taxation. The appeal was nothing, having been entered after the money was levied. An appeal from the prothonotary to the court, in a legal sense, is nothing under any circumstances, and this court cannot recognize it. It suspends nothing; it delays nothing. The judgment and execution remain in full force. Besides, it was abandoned by the suing out of this writ of error, by which the record is removed, and nothing left before the court below.

3. The plaintiff in error is entitled to restitution of what has been erroneously levied. It is a matter of course to award restitution on the reversal of an execution executed. *Cassel* v. *Duncan*, 2 *Serg. & Rawle*, 57.

*Porter* and *Tilghman*, for the defendant in error.—The plaintiff below, having obtained a good judgment, was entitled to have it carried into execution. It was entered in the form in which

(Barnet *v.* Ihrie.)

all judgments are entered within the first four days, and must be understood to be upon the finding of the recognitors, which is incorporated into, and forms part of the judgment of the court. The recognitors have viewed the nuisance, and have found that the dam should be removed, and that the defendant should pay damages to the amount of two hundred dollars, besides costs, and this court have decided that the judgment is a good one. Whether the writ of execution is called a *Distringas* or an *Habere Facias Seisinam,* is of little consequence, provided it is calculated to carry the judgment into effect. No other can be found so well adapted to that object. The writ recites the judgment and commands the sheriff to do execution according to law. If, therefore, there is error, it is in the judgment, which it is now too late to allege. The whole of the proceedings in assize of nuisance, go on the principle of a disseisin, and this court has said, they are the same as in an assize of novel disseisin. In *Lill. Ent.* 598, is the form of a writ of seisin in an assize of novel disseisin of an office, which states, as this writ does, that the plaintiff recovered by the view of the recognitors of assize. In affirming the judgment in this case, at the last term, the Chief Justice declared, that in adapting this action to modern use, it is to be purged of its subtleties in matters of form, without interfering with essentials. If it is to be made to correspond with modern modes of proceeding, it must necessarily wear a different dress from what it formerly did. There could be no possible use in the presence of the recognitors. Even in *England,* no case has occurred for a great length of time, in which the recognitors have been present at the execution; and if the law was so three hundred years ago, that is no reason why the same highly inconvenient mode of proceeding should now be adhered to. The sheriff is the executive officer of the court. He is the highest officer, and in contemplation of law, the first man in the county. In no other hands, therefore, could the execution of the judgment of the court be placed with greater safety. If he goes beyond his duty or executes it improperly, he is responsible for his acts, and having given abundant security, there is ample redress for those who are injured. It is not pretended that any wrong was done in the execution of the writ in question. To require the presence of the recognitors, would always be inconvenient and sometimes impossible. There may be an obstruction, to abate which, would require several weeks. Are the recognitors to be present during the whole time required for its removal? This would be highly oppressive. The judgment may be removed by writ of error, and hung up in this court several years, in the course of which, some of the recognitors may die. Are the survivors to attend the execution of the writ? There is no law for that. The integrity of the jury being destroyed, execution cannot be done at all. In speaking of the view of the recognitors, both the author of *Fleta* and *Booth,* refer to the view before trial. When it is said the party shall have the nuisance removed by the

(Barnet *v.* Ihrie.)

view of the recognitors, the meaning is, in consequence of their view; for when *Fleta* was written, the recognitors found upon their own view, without hearing witnesses. But there is direct authority to show that the sheriff, with the *posse comitatis,* is the proper instrument to abate the nuisance. 3 *Bl. Com.* 222. Formerly a writ of *Habere Facias Possessiomen,* was executed in the presence of viewers; but that ancient form no longer exists. *Schwenk* v. *Umsted,* 6 *Serg. & Rawle,* 354. There are other cases in which the sheriff is called upon to exercise as much discretion and judgment as in the abatement of a nuisance. In dower, the sheriff, without a jury, assigns to the widow, her third of her husband's land; and what constitutes that proportion, is left to him. If he wilfully errs, he is answerable. In the present case, the plaintiff had his election between a *Distringas,* and an *Habere Facias Seisinam.* The former writ being the least efficacious, he has rejected it, and adopted the latter, as the best calculated to give effect to the judgment of the court.

2. The bill of costs is not a proper subject of examination by this court. There was an appeal to the Court of Common Pleas, from the taxation by the prothonotary, and that appeal has never been decided. There is, therefore, no judgment or order of the court in relation to the costs in question. This was the fault of the opposite party, who having objected to the taxation by the prothonotary, should have obtained the decision of the court on the subject.

In all the cases cited in support of the opposite argument, the Court of Error reviewed judgments in the inferior courts, involving the right to costs, but did not, as they would be obliged to do in this case, inquire into the taxation of the different items by the prothonotary, which would require an examination of evidence. The case cited from 5 *Mass. R.* 389, depended on the peculiar situation of the court in which the costs were taxed. The same court reviewed the bill. There was no writ of error from a superior to an inferior court, but an appeal from a judge of the county court, to the court in bank.

(The counsel for the defendant in error, then took up the bills of costs, and endeavoured to show that they contained no improper charges.)

The opinion of the court was delivered by

GIBSON, C. J.—It is decisive against the writ, that no precedent for it can be shown, it being essentially different from the form in the *Register.* We are, to say the least, by no means familiar with these antiquated remedies; and we shall proceed safely only so long as we follow the footsteps of our early predecessors, discernible in the books. We have no authority to change the nature of the remedy by adopting an execution unknown to the law. Matter of form, such as the style of process, may undoubtedly be altered to adapt it to our practice; but there is a *substantial* difference between

(Barnet *v.* Ihrie.)

an assize of nuisance, and an assize of novel disseisin, from which the form of execution employed here, has been borrowed. Seisin, actual, or symbolical, may be delivered by the sheriff without any peculiar disadvantage to the disseisor; but it certainly would be less detrimental to the author of a nuisance, to abate it himself, especially in the case of an erection that may be still rendered useful. The sheriff and his *posse*, could not be expected to execute the judgment with as little injury in this respect, as the owner of the property; and, before he shall be deprived of the opportunity to abate the nuisance, which the *Distringas* affords, the plaintiff must show good authority for the course proposed. He has not done so, and we are bound to say the execution issued erroneously.

An objection is made on another ground which it is unnecessary, but not improper to examine. The plaintiff has taken out execution for certain costs to which, it is said, he is not entitled; and this involves a preliminary inquiry into the jurisdiction of a Court of Error, of the subject of taxation.

According to the common law, error can be assigned only in some part of the record, and consequently not in a bill of costs. In *England*, where the terms of the judgment are set out at large, a gross sum is adjudged for the costs; and a Court of Error cannot inquire into the constituent parts, because these cannot judicially be made to appear; so that where costs are recoverable at all, it cannot be alleged that too much or too little was awarded. Here, however, a different practice, recognized in a long train of decisions, has made the costs so far a matter of record, as to enable the court to judge whether the constituent parts of the bill are specifically such as the law allows. With us, the judgment is never reduced to form, but signed in blank, it being considered to be in fact, what in legal estimation, it ought to be; so that where particular parts of the costs are objectionable, the remedy is not a reversal of the judgment *pro tanto*, unless there has been a special award of execution for those costs, but the execution is reversed, so far as respects the objectionable matter, as having issued without a correspondent judgment to warrant it. Here, the judgment is good in point of form, and has, in fact, been affirmed on error; so that the defendant would be without remedy, if we could not lay our hands on the execution.

The limitation to this is, that we will not take cognizance of an exception, which depends on matter of fact.

The plaintiff's bill proper; the sheriff's bill, with the exception of three items for the recognitors, amounting to eighteen dollars, and attendance, two dollars and sixty-two cents; and the prothonotary's bill, with the exception of two dollars for the judgment of the court, are all unexceptionable. There is, however, a charge of one hundred and thirty-seven dollars for the attendance of the recognitors, for which there is no colour of law. Although recognitors are sometimes called jurors, they are not so within the meaning of the fee bill, the plain intent of which, was to compensate those

(Barnet *v* Ihrie.)

who should be of the general panel.    But the fees, even of such, are paid not by the parties, but the public; and they, therefore, are not chargeable in the bill of costs.    There is no provision for recognitors; and compensatory fees are expressly forbidden.    In conclusion, there is a bill for expenses incurred in doing execution, which, as well for the reason just assigned, as because the execution was unauthorized by the law, is altogether inadmissible.

Execution reversed.