# THE SUPREME COURT

OF

# PENNSYLVANIA.

Norris.
82  23
126  223
82  23
142  124
82       23
28 SC    53

## MIDDLE DISTRICT—HARRISBURG 1876.

## Grubbs' Appeals.

1. After protracted litigation in partition and an allotment of the estate to one of the parties an auditor was appointed to fix the amount of fees to be paid to plaintiffs' counsel, to be taxed as a part of the costs, under the provisions of the Act of April 27th 1864, who reported $2500 as a proper allowance, which report the court confirmed. *Held*, that counsel fees in the ordinary sense as compensation for services in contested causes were not contemplated by the Act of 1864, but that the services for which the statute meant to provide were searches, formal motions, and the preparation of papers and conveyancing.

2. An order of the Common Pleas for the payment of counsel fees is in the nature of a final judgment and subject to review by the Supreme Court, but the proper form to bring the matter in controversy before this court for review is by writ of error and not by appeal.

3. *It seems* that in a proper case, where the equity of the party who seeks relief is clearly made out, where no adversary rights can be impaired, and where it affords the only means of averting an injustice, all the effect of a writ of error may be given to a certiorari.

May 2d 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Appeals from the Court of Common Pleas of *Lancaster county:* Of May Term 1876, Nos. 64 and 112.

E. Burd Grubb, Henry B. Grubb, Charles R. Grubb and Euphemia P. Grubb; Charles R. and Euphemia P. by their guardian Euphemia B. Grubb, were plaintiffs, and Alfred Bates Grubb defendant, in proceedings in partition, upon the determination of which, the court below fixed a sum to be allowed plaintiffs, as fees

(23)

of their counsel, to be taxed as part of the costs of said suit, and from the decree of the court making this allowance, both plaintiffs and defendant appealed.

A certiorari also issued on behalf of the defendant. The proceedings were for the partition of a valuable estate, and the litigation was protracted over a period of four years.

The summons in partition issued on the 18th of August 1870, a verdict was found for the plaintiffs on the 21st of October 1872, and judgment *quod partitio fiat* entered on the 18th of January 1873, which judgment taken to the Supreme Court was affirmed on the 14th of July 1873. (See report of case in 24 P. F. Smith 25.)

On the 11th of April 1874, the court below decreed that the estate should be allotted to Alfred Bates Grubb, on his bid, for the sum of $175,000, and that the costs of these proceedings in partition, including the fees of plaintiffs' counsel, to be taxed by the court, or under its direction, should be divided between and be equally paid by the parties.

On the same day the court appointed O. J. Dickey, Esq., auditor, to report what was a proper fee.

The claims of the respective parties are fully set forth in the auditor's report, as follows :—

" The auditor appointed to report what is a proper fee for plaintiffs' counsel to be taxed in this case under the provisions of the Act of 27th April 1864, met the parties and heard them, and took the evidence herewith submitted. Plaintiffs' counsel claimed before the auditor $6000, in the aggregate (the three attorneys for plaintiffs claiming together), as a reasonable allowance for counsel fees to be taxed in the case, and the evidence fully sustains such claim as a reasonable sum for services rendered, and if there were no other question presented the auditor would not hesitate so to find and report. The counsel for defendant admitted, and as witnesses when called by plaintiffs, stated that, in their opinion, $6000 was a reasonable charge for the services rendered by plaintiffs' counsel, but whilst admitting the reasonable character of the charges, object to the same being taxed in the case, claiming that the fees were earned in a case litigated, and were wholly chargeable against plaintiffs individually as litigants and for their own litigation, and in support of that position cited Snyder's Appeal, 4 P. F. Smith 67. The records, pleadings, paper-books and arguments in the case were given in evidence and disclose the following facts :—

" First. That defendant denied plaintiffs' right to have the partition sought for and resisted with all the power and ingenuity of some of the best legal talent of the state, plaintiffs' obtaining his judgment. To this resistance of plaintiffs' right, all manner of legal objections that the highest character of legal acumen could suggest were called in aid, both in the court below and in the

Supreme Court. The plaintiffs, however, obtained their judgment and partition was had.

"Second. It appears defendant was greatly stimulated in his opposition, in the fear that, if partition were had, he would be greatly prejudiced in the loss or diminution in value of a mining right purchased by him, in connection with the purchase of his interest in the property sought to be divided or appraised. This fear would seem from the opinion of the Supreme Court in the case not to have been well founded.

"Thirdly. It appears that plaintiffs, when this opposition was made to their proceedings in partition, and resistance of defendant was had, did not by their counsel simply contend for their right to have partition, and seek only to establish the regularity of their proceedings in substance and form, but accepted the suggestion of defendant's counsel inspired by their doubts and fears, and attempted to obtain a ruling with much ingenuity and ability that defendant's mining right, purchased by him as above stated, should be excluded from the proceedings, and in this the Supreme Court were against them. Thus we have a proceeding in partition regularly instituted, properly brought, everything as to substance and form regular and correct, resisted with great ingenuity, ability and skill, needlessly, as the termination of the case shows.

"In such case are the counsel conducting it to a successful termination and seemingly satisfactory conclusion, entitled to be compensated out of the fund thus raised, or must they look only to the plaintiffs? It is said in Snyder's Appeal, by the learned judge delivering the opinion, that this law was not designed to pay the fees of mere litigation, so that a litigant should saddle his costs on others, and this is doubtless a correct statement of the law, at all events a binding one. Then was this litigation thus far and to this extent the litigation of the plaintiffs? We think it was their right to demand and have partition as the event proved and in the form they adopted as was finally adjudged. Was not therefore the litigation that resulted, the litigation of the defendant, who needlessly objected to the form and resisted this right? If this were not so, every co-tenant desiring to avoid his share of the burdens in a proceeding, has only to resist the proceeding, and the stronger the resistance he offers the greater his chance to escape. In this view of the case and looking to the proper legitimate services of the distinguished counsel employed, the great value of the property involved, and their responsibility, the sworn testimony in this case as to the value of professional services, the auditor has come to the conclusion to recommend $2500, to be taxed in the case, as a proper fee for plaintiffs' counsel.

"In coming to this conclusion, the auditor desires to state, he does not think the sum claimed, $6000, as being too much for all the services rendered; for all the testimony shows that to be a reason-

able and proper charge, but because all of the services were not rendered in procuring the partition in this case, but part of them in a collateral matter for the exclusive benefit of plaintiffs for which they ought to pay the remaining $3500."

Plaintiffs and defendant both excepted, the exceptions being found substantially in the assignments of error below.

The court, Livingston, P. J., without delivering an opinion, overruled the exceptions of both parties, adopted the amount fixed by the auditor, and directed the payment as found; Patterson, A. L. J., dissenting.

Defendant appealed and assigned for error that the court erred,

1. In allowing to the plaintiffs, for the fees of their counsel, any sum greater than that which would be a reasonable compensation for the conduct of the proceedings in partition merely, and without regard to any services rendered by those counsel to the plaintiffs in the litigation which arose in this suit.

2. In allowing to the plaintiffs, as counsel fees, any compensation for the services of their counsel rendered to them in or about the litigation.

3. In adopting as the proper amount to be allowed to the plaintiffs' for counsel fees, the sum of $2500, as recommended by the auditor.

4. In confirming the auditor's report and adopting its conclusions.

Plaintiffs appealed and the errors assigned were :—

1. The court erred in not taxing as a reasonable allowance to plaintiffs, for counsel fees, the entire sum which the auditor reported as being reasonable and proper for all the services rendered in the case, viz., the sum of $6000.

2. In deciding that the only fees to be allowed to the plaintiffs for their counsel, were such as would be a reasonable compensation for the conduct of the proceedings in partition merely, and without regard to services rendered in the litigation caused by the defendant in resisting their right to partition.

*S. H. Reynolds* and *A. Slaymaker* (with whom was *Wayne Mac-Veagh*), for appellant, Alfred Bates Grubb, defendant below.—The auditor, though declining to make the allowance demanded by the plaintiffs, has yet distinctly, and in express terms, allowed to them *fees earned* in litigation. Was he justified in so doing? Snyder's Appeal, 4 P. F. Smith 67, furnishes a conclusive answer: "The design of the law was to place the parties upon an equality as to the expense of effecting partition among them. Owing to minority, coverture and other causes, the proceedings in partition may be indispensable; and yet the party, no matter how small his interest, was compelled to pay attorney's fees for conducting them to a conclusion as beneficial to others as to himself. The law was intended to remedy this injustice, but was not designed to pay the fees of

[Grubbs' Appeals.]

mere litigation, so that a litigant should saddle the cost of his litigation on others. Hence, the law fixed the compensation as a reasonable one to be taxed by the court." The controversy turns upon the construction of the Act of 27th April 1864, sect. 1. Statutes are to be construed with reference to the common law, for it is not to be presumed that the legislature intended to make any innovations upon the common law, further than the case absolutely required: 1 Kent's Com. 464. Legislative enactments are to be expounded as near to the use and reason of the prior law as may be, when this can be done without violation of its obvious meaning: Cadbury v. Duval, 10 Barr 270 ; Borland v. Nichols, 2 Jones 42. At common law, as a rule, the expenses of litigation were never recoverable by the successful party, even though the demand or defence, by reason of which they were incurred, proved ultimately to be entirely groundless, and this seems now to be the invariable rule in Pennsylvania: Terry's Ex'r v. Drabenstadt, 18 P. F. Smith 400 ; Good v. Mylin, 8 Barr 51 ; Stopp v. Smith, 21 P. F. Smith 285 ; Alexander v. Herr, 1 Jones 537 ; Porter v. English, 1 Phila. R. 85. In partition the plaintiff was not allowed any costs whatever until the Act of 11th April 1835 : Stewart v. Baldwin, 1 Penna. R. 461 ; Shaw v. Irwin, 1 Casey 347. But, as in much the greater number of instances, this action of partition was used merely as a means (and where any of the parties were by reason of legal or other disabilities incapable of acting, the only means), for the accomplishment of that which the law always regards with favor, viz., the relief of persons holding as tenants in common, from the embarrassments incident to a divided dominion, and the placing of each of them in the unfettered control of his own portion of the common property ; and as the proceedings in such cases were beneficial to all alike, and the services of the counsel employed to conduct them, might be fairly considered as rendered to all equally, it was manifestly unjust that the expense of procuring those services should be borne exclusively by the one or more of the parties interested who had become actors in the case. As a remedy for this injustice the legislative provision in question was eminently proper, but to give to it any effect further than is requisite for that purpose would be to disregard the reason and spirit of that provision, and to run counter to the uniform tenor of the usage or practice of the common law, as well as the well-defined distinctive policy of the jurisprudence of Pennsylvania on the subject. The only professional services which by the utmost latitude of construction can be considered as rendered by those counsel to the defendant, was the management of the proceedings essential to the procurement of the partition without reference to the litigation. The conduct of those proceedings involved no special difficulty, and facilitated as it was by existing records of like proceedings with regard to the same property, required little other ability than that

of an ordinary conveyancer, and would have been compensated amply by a sum of $200 or $300, and very liberally by one of $500.

*H. M. North* and *James L. Reynolds* (with whom was *Clement B. Penrose*), for appellants, Edward Burd Grubb *et al.*, plaintiffs below.—Had the Act of 1864 intended to allow a mere fee for effecting the conveyance, nothing would have been easier than to have said so; and in that case the provision that it should be taxed by the court would have probably been unnecessary. But this is not what is said. "The costs in *all* cases of partition," recites the act. "All" is the word used, and the direction that the amount shall be taxed by the court is intended to prevent the extravagance of counsel or the liberality of clients from operating to the disadvantage of others not parties to the retainer. The court is to determine what is just and reasonable under all the circumstances of the case. What right have we, in the teeth of such language as that used by the act, to introduce any exception or qualification such as is contended for by the defendant? To do so would, in the words of a very distinguished jurist in a recent case, be "simply a repeal of a statute written in the plainest words found in the English language," and to assert "that the legislature did not see what was directly before their eyes and must have been seen," viz., that some partitions were contested while others were not; and that they used the word "all," intending to include one class and to exclude the other. It did not need the elaborate citation of authorities to show that at common law counsel fees were never allowed as costs, or that prior to the Act of 1835, no costs at all were allowed in partition. If the common law had not been regarded as defective in both these respects, neither the latter act nor that now under consideration would have been passed. When the auditor found that $6000, was a reasonable and proper charge for the services rendered by the plaintiffs' counsel, he erred in not reporting that sum to be taxed and paid by the parties in proportion to their several interests. The doctrine contended for by defendant is not supported by Snyder's Appeal, 4 P. F. Smith 67. There an actual partition of the land had taken place, and six allotments out of seven accepted. Only one was ordered to be sold, and it was attempted in the settlement of the executor's accounts of the proceeds of this sale to have plaintiffs' counsel fees deducted. Upon two grounds, this court held, that this could not be done, either of which would have in itself been fatal to the claim: 1. That "the cost of the partition, including the reasonable attorneys' fees, belonged to the whole partition, and not to this sale merely." And 2. That "all the costs were to be taxed, including the reasonable attorney fee, and as they were to be paid by the parties in partition, the taxation must be according to the rules of court for taxing costs."

Mr. Justice WOODWARD delivered the opinion of the court, October 16th 1876.

The original action between these parties was partition, which resulted in the allotment of the premises involved in it to the defendant. An application was then made for the allowance of the fees of the counsel for the plaintiffs for professional services in the action. An auditor was appointed on this application, and on the 31st of March 1875, he made a report fixing the sum for counsel fees to be taxed as costs in the case at $2500. On the 4th of September 1875, the report was confirmed by the Common Pleas. The plaintiffs appealed on the ground that the allowance was inadequate, the claim on their behalf having been $6000, and the defendant appealed on the ground that the allowance was excessive, claiming that " the auditor should only have allowed such fee out of the estate as would compensate the attorneys for services rendered in the conduct of the proceedings had there been no contest."

The proceeding complained of was under the terms of the Act of the 27th of April 1864, in these words : " The costs in all cases of partition in the Common Pleas or Orphans' Court of this Commonwealth, with a reasonable allowance to the plaintiffs or petitioners of counsel fees, to be taxed by the court, or under its direction, shall be paid by all the parties in proportion to their several interests." There is no room for doubt as to what the legislature intended by this enactment. While in the ordinary course of practice, a partition was for the benefit of all the owners of the property divided, before the act the entire burden of the compensation of counsel for conducting the formal proceeding was thrown upon the plaintiff in the Common Pleas or the petitioner in the Orphans' Court. In every case professional aid was indispensable, and the purpose of the statute was to divide the cost of the employment of that aid amongst the parties equally benefited by the result of the proceedings. But it was indispensable aid only that was contemplated—such usual and accustomed service as the exigencies of each case should render necessary. The compensation of counsel for services in the trial of contested causes was not the end in view. It would be a novel and anomalous feature in our legal system to have such compensation " taxed by the court." It is a settled rule that a successful party cannot be allowed even by a jury, in the extremest cases, for such expenses: Good v. Mylin, 8 Barr 51; Stopp v. Smith, 21 P. F. Smith 285. The act had relation to costs capable of calculation and ascertainment, and not to such fees as counsel and client are accustomed of themselves to adjust. In its very title, indeed, it was stated to be " relative to costs in cases of partition." The services for the performance of which the statute was meant to provide were searches, formal motions, the preparation of papers and conveyancing—in a word, for such professional duties as would properly

enter into the bill of costs of an attorney under the English practice. Counsel fees in the ordinary sense—such as are paid to a barrister for a trial in court—were not in contemplation. The distinction is as well settled as any other in the law, and is as well recognised and understood here as if the profession were divided into classes as it is in England. " Fees of attorneys are considerations allowed them as a recompense for their labor :" 1 Lil. Abr. 598. " Action on the case lies for an attorney for his fees against him that retained him in his cause ; and attorneys are not to be dismissed by their clients till their fees are paid :" 1 Lil. Ent. 142. But a counsel can maintain no action for his fees, which are given not as a salary or hire, but as a mere gratuity, which a barrister cannot demand without doing wrong to his reputation : Davis 23. It was said by Bailey, J., in Morris v. Hunt, 1 Chitty 551, that " the reason why counsel can maintain no action for their fees is, because their compensation is not made to depend on the event of the cause, and for the purpose of promoting the honor and integrity of the bar, it is expected that all their fees should be paid when their briefs are delivered." It is true that the rule is different in Pennsylvania, and that suit for counsel fees may be here maintained. But the authorities quoted exhibit common law distinctions that are well recognised, and serve aptly to illustrate the legislative intent in the passage of the Act of 1864.

In proceedings in partition a common benefit is secured to all the parties. The natural and obvious object of the statute was to enforce a contribution from each, proportioned to his share of the common service rendered to them all. Each of the parties would thus pay for the aid he had received. If counsel fees for conducting an expensive contest against him were to be allowed, he would be paying for hostility and attack, and not for aid. It would be straining the law to give it such a scope. Legislative enactments are to be expounded as near to the use and reason of the prior law as may be, when this can be done without violation of its obvious meaning ; for, say the cases, it is not to be presumed the legislature intended to make any innovation upon the common law further than the case absolutely required : Cadbury v. Duval, 10 Barr 265. Manifestly, this statute was not designed to shoulder upon defendants in partition the expenses incurred by a plaintiff in adversary litigation.

That this construction is accurate would seem clear from the language of the present Chief Justice in Snyder's Appeal, 4 P. F. Smith 67. He said : " The design of the law was to place parties upon an equality as to the expenses of effecting partition among them. Owing to minority, coverture and other causes, the proceeding in partition may be indispensable ; and yet the party, no matter how small his interest, was compelled to pay attorney's fees for conducting them to a conclusion as beneficial to others as to himself. The law was intended to remedy this injustice, but it was

not designed to pay the fees of mere litigation, so that a litigant should saddle the cost of his litigation on others."

Some embarrassment arises out of the mode in which this record has been brought up. It is doubtful whether the auditor's report, which it is assumed sets forth the grounds on which the order of the court was made is legitimately the subject of review. Looking into the report, it is clear that the auditor allowed to the plaintiffs' counsel fees in what he called "the litigation of the defendant"— that is, in the trial of the issues created by the interposition of a defence to the demand made by the plaintiffs for partition. Such an allowance is clearly beyond the scope of the statute and a departure from the construction given to it in Snyder's Appeal. It is not necessary, however, to decide whether the opinion and reasons of the auditor can be reached or not. The record shows the allowance of counsel fees amounting to $2500. Apart from any grounds for the auditor's decision disclosed by his report, the amount of the sum allowed affords adequate and conclusive proof in itself that the true meaning of the Act of 1864 was misapprehended. A case warranting the payment of so significant a sum for the services of counsel in conducting the mere formal proceedings in an action of partition, can hardly be conceived. At least clear affirmative evidence of facts to justify it would be required. There is no such evidence here.

Upon the argument objection was made on the part of the plaintiffs to the jurisdiction of this court. That the subject-matter of the controversy is open to review in a proper form, is regarded as free from doubt. The Common Pleas made an order in the nature of a definitive judgment for the payment of the fees of the counsel for the plaintiffs. To the extent of his interest in the land, the defendant was a party affected, and so far as it was erroneous he was a party aggrieved by the entry of this order. A writ of error lies in all cases in which a court of record has given a final judgment, or made an award in the nature of a judgment: Commonwealth v. Judges of Common Pleas, 3 Binn. 273. In this state, practice having made costs so far a matter of record as to enable the court to judge whether the items in the bill are such as the law allows, a writ of error will lie upon an execution for them; and the Supreme Court will inquire into the legality of the charges, though they will not take cognisance of an exception which depends on matter of fact: Barnet v. Ihrie, 1 Rawle 44. A multitude of authorities, such as Horner v. Harrington, 6 Watts 331, McMasters v. Rupp, 10 Harris 298, and King v. Boyles, 7 Casey 424, prove that when a legal principle has been involved, a judgment for costs entered by the Common Pleas, whatever the particular form of the proceeding may have been, has been held to be properly the subject of review.

Whether an appeal is the proper form for this review is a graver question. The 6th section of the Act of the 11th of March 1809,

[Grubbs' Appeals.]

does not give the option to a party of entering an appeal or taking out a writ of error, as the error below is on the record or *dehors* the record; but the law means that causes shall be removed according to the course of proceedings in the respective courts—an appeal from the Orphans' and Register's Court, and a writ of error to the Common Pleas and Quarter Sessions : McClemmons *v.* Graham, 3 Binn. 88; Commonwealth *v.* Haas, 7 P. F. Smith 443. An appeal is the proper form of review of equitable remedies : Springer *v.* Springer, 7 Wright 518; Aurentz *v.* Porter, 12 Id. 335. Clear, therefore, as the rights of the defendant are believed to be, his appeal, as such, cannot be sustained. It is not the form in which the action of the Common Pleas can be reviewed, and it can only be dismissed.

But while the plaintiffs trusted simply to their appeal, a certiorari was issued on behalf of the defendant. This writ brings up the record. In a proper case, where the equity of the party who seeks relief is clearly made out, where no intervening adversary rights can be impaired, and where it affords the only means of averting an injustice, all the effect of a writ of error may be given to a certiorari. Thus, in Cooke *v.* Reinhart, 1 Rawle 317, while it was held that a writ of error, and not a certiorari, was the proper remedy for the correction of errors in the Common Pleas in a case brought into that court on a certiorari to remove the proceedings of two aldermen or justices of the peace under the Act of the 6th of April 1802, yet after the lapse of two terms, this court refused to quash a certiorari improvidently issued, and after argument reversed the judgment. Both parties appealed in this case, and its merits have been fully disclosed. Treating the certiorari as a writ of error, all embarrassment would be removed, for the report of the auditor would be brought directly into view. And this would be done if the justice of the case could be reached in no other way. A general dismissal now, to be followed by a fresh proceeding hereafter, would involve cost, inconvenience and delay that would be wasted in securing an end that may be at once attained. But such a course is not necessary, for the certiorari has brought up the record showing the nature of the application made on behalf of the plaintiffs, and the judgment in pursuance of it that was entered. As has been already stated, the amount of the judgment is evidence that all due and reasonable discretion was transcended by the Common Pleas, and it is a familiar principle that the possession of discretionary power does not justify its improvident and excessive use.

Both appeals are dismissed; and upon the certiorari issued on behalf of the defendant, it is ordered and adjudged that the judgment of the Court of Common Pleas of the 4th of September 1875, fixing the counsel fees of plaintiffs to be taxed as costs at $2500, be reversed at the costs of the plaintiffs, and that a *procedendo* be awarded.